Henry L. POULIN, Jr.

v.

Robert W. BONENFANT, as Sheriff of
Androscoggin County, Maine.

Supreme Judicial Court of Maine.

March 20, 1969.

Gaston M. Dumais, Lewiston, for plaintiff.

Charles H. Abbott, Asst. County Atty., Auburn, for defendant.

Before WILLIAMSON, C. J., and WEBBER, TAPLEY, MARDEN, and WEATHERBEE, JJ.

WEATHERBEE, Justice.

On May 28, 1968 the Governor of the Commonwealth of Pennsylvania issued his warrant reciting that Paul Barry West, also known as Henry Louis Poulin, Jr., had been indicted for several criminal offenses in Pennsylvania and that he had fled from that State and may have taken refuge in Maine. Accompanying the demand was a copy of the indictment in question which was declared authentic by the Governor, and supported by an affidavit of the District Attorney of the County where the indictment was pending. The warrant required that the fugitive be apprehended in Maine and delivered to a named Pennsylvania police officer. In conformity with the requirements of the Uniform Criminal Extradition Act (15 M. R.S.A., Sections 201–229) the Governor of the State of Maine on June 13, 1968 issued his rendition warrant ordering Maine authorities to arrest the fugitive and deliver him into the custody of the Pennsylvania officer.

In the meantime petitioner, who was known locally as Henry L. Poulin, Jr., had been apprehended in Androscoggin County on a fugitive from justice warrant. Petitioner, who was about to be surrendered to Pennsylvania, brought a petition for a Writ of Habeas Corpus which was heard by a single justice of this Court. After a lengthy hearing the Justice denied the Writ and the matter comes before us on petitioner's appeal.

Petitioner argues that the Justice's decision was erroneous because the State had failed to establish elements essential to the State's proof.

The Constitution of the United States (Article 4, Section 2) and a federal statute (18 U.S.C., Section 3182) require the Governor of Maine to surrender a fugitive from justice from another State upon a valid requisition from the chief executive of the other State (subject to the right of the asylum state to prosecute the fugitive first on criminal charges pending in that State—a situation not present here). The Uniform Criminal Extradition Act determines the procedure to be fol-

lowed in this State. Section 210 gives the arrested person the right to test the legality of the arrest by applying for a writ of habeas corpus, as this petitioner has done. The issue of guilt or innocence of the accused is not before the Court on habeas corpus. Ex parte King, 139 Me. 203, 28 A.2d 562 (1942). The Court, in this petition for a writ of habeas corpus, is limited to inquiry as to whether the petitioner stands charged with crime in the demanding state, whether the petitioner is in fact the person charged with this crime, whether he was present in the demanding State at the time of the crime, left and was found in the asylum state and whether the warrants of arrest and of requisition with required supporting documents comply with the statutes and justify the rendition warrant.

■ The Governor of the asylum State acts in a quasi-judicial capacity in issuing a rendition warrant. Re Baker, 21 Wash. 259, 57 P. 827 (1899); 31 Am.Jur. 2d, Extradition, Section 50; 35 C.J.S. Extradition § 14(9)–15. In the absence of contrary proof it is presumed that the Governor lawfully performed his duty as to determination of the jurisdictional facts and the jurisdictional facts recited in the warrant are established by the presumption unless overcome by the petitioner. If the rendition warrant is regular and sufficient on its face, the burden of disputing the necessary conditions for extradition rests upon the petitioner.

"It is conceded that the determination of the fact by the executive of the state issuing the warrant of arrest, upon a demand made upon that ground, whether the writ contains a recital of express finding to that effect or not, must be regarded as sufficient to justify the removal until the presumption in its favor is overthrown by contrary proof." Hyatt v. People of New York on Behalf of Corkran, 188 U.S. 691, 710, 23 S.Ct. 456, 458, 47 L.Ed. 657 (1903).

People ex rel. James v. Lynch, 16 Ill.2d 380, 158 N.E.2d 60 (1959); Murphy, Petitioner, 321 Mass. 206, 72 N.E.2d 413 (1947); Baker, Petitioner, 310 Mass. 724, 39 N.E.2d 762 (1942); Commonwealth v. Supt. of Philadelphia County Prison, 220 Pa. 401, 69 A. 916 (1908); Ex parte Grabel, Ky., 248 S.W.2d 343 (1952); Ex parte Murray, 112 S.C. 342, 99 S.E. 798, 5 A.L. R. 1152 (1919); 31 Am.Jur.2d, supra, Sections 62, 66; 35 C.J.S. supra § 16 d; Anno. 40 A.L.R.2d 1158.

"If the warrant of arrest is in proper form it is prima facie proof that the relator has been substantially charged with crime in the demanding state, and the burden is then placed on him to overcome such proof." 2 Underhill, Criminal Evidence, p. 1410.

■ Petitioner's first attack on the legality of his arrest alleges that the State had failed to prove that the offenses with which petitioner stands charged in Pennsylvania are crimes under the laws of the demanding State. The Governor of Pennsylvania certified that they were crimes under the laws of Pennsylvania and implicit in the language of the warrant of the Governor of Maine was his finding that offenses were crimes in the demanding State. Not an iota of evidence appears in the record to dispute the presumption that the facts recited in the Governor's warrant are true. The Justice in the Superior Court correctly rejected this argument.

■ Petitioner also contends that the State had failed to prove that petitioner was a fugitive from justice and especially that petitioner was present in Pennsylvania at the time of the crime and that he fled from that State. Again the issuance of the rendition warrant places the burden as to these issues on the petitioner. The petitioner chose not to testify and offered no evidence to dispute the presumption that he was in fact in Pennsylvania at the time of the alleged crimes. On the other hand tes-

timony of two police officers from Pennsylvania placed the petitioner in the State near the scene of the alleged crimes one-half hour before and two hours after their alleged commission. Their testimony was that after arrest, photographing and finger printing in Pennsylvania petitioner was released on bail. Later the Grand Jury returned indictments against him and, following local practice, an attorney appeared for petitioner, in petitioner's absence, and entered a plea of not guilty for him and the matter was set for trial on a specific date. Petitioner did not appear for trial and months later the officer and petitioner's bondsman located petitioner in Lewiston, Maine. Although no evidence was offered to explain petitioner's failure to appear in Pennsylvania for trial, petitioner's counsel argues that the Justice in the Superior Court should have found that petitioner, having given bail and an attorney having appeared for him, could not be considered a fugitive. This argument disregards the simple fact that petitioner, although free on bail conditioned on appearance for trial, became a fugitive when he failed to appear for trial.

> "To be a fugitive from justice within the meaning of the Act of Congress, it is not required that the accused have left the state in which it is alleged the crime was committed after an indictment has been found against him or in order to avoid a prosecution, but it is necessary that, having committed what constitutes an offense, he be absent from the state when he is sought to answer therefor and is found within the jurisdiction of another, and the presence of the accused in the demanding state at the time the crime is committed is sufficient to justify his arrest and return as a fugitive from justice." 4 Wharton, Criminal Procedure, 337.

State v. Hale, 157 Me. 361, 172 A.2d 631 (1961); McTigue v. Rhyne, 180 Kan. 8, 298 P.2d 228 (1956); Pearson v. Campbell, 97 N.H. 444, 91 A.2d 453 (1952); Taft v. Lord, 92 Conn. 539, 103 A. 644 (1918); 31 Am.Jur.2d, supra, Section 15.

 Petitioner's argument that the affidavit accompanying the requisition warrant insufficiently supports it by failing to state in detail where, how and when petitioner was involved in the commission of the alleged crimes is without merit. No such detailed accusation is required of either the warrant or the affidavit. It is sufficient if the indictment satisfactorily (even though artlessly) shows that petitioner has been charged with crime in the demanding State and if the existence of the indictment is asserted in the affidavit. Matter of King, 139 Me. 203, 28 A.2d 562 (1942); Pierce v. Creecy, 210 U.S. 387, 28 S.Ct. 714, 52 L.Ed. 1113 (1908); Dawson v. Beasley, 242 Ind. 536, 180 N.E.2d 367 (1962); 35 C.J.S. Extradition § 14(7).

 Finally petitioner argues that the State has failed to prove that the petitioner was the person charged in the Pennsylvania indictment. As to proof of identity of the petitioner the State does not have the benefit of the presumption of compliance by the Governor with necessary legal prerequisites, at least in the absence of identity of names. Baker, Petitioner, supra; Commonwealth ex rel. Edgar v. Davis, 425 Pa. 133, 228 A.2d 742 (1967); State ex rel. Frady v. Allen, 83 Fla. 652, 92 So. 154 (1922); Ex parte Freeman, 80 Ariz. 21, 291 P.2d 795 (1955); 31 Am.Jur.2d, supra, Section 67; 84 A.L.R. 341. Here the petitioner was arrested, booked and indicted in Pennsylvania as Paul Barry West. After he had been located in Lewiston, Maine, it was learned that his correct name is Henry Louis Poulin, Jr. and extradition proceedings were commenced in Pennsylvania to return Paul Barry West, also known as Henry Louis Poulin, Jr. to that State. The requisition warrant signed by the Governor of Pennsylvania demanded the return of Paul Barry West, also known as Henry Louis Paulin, Jr. It is true that the Governor of the demanding

State may not, when demanding the return of a person indicted as John Smith, substitute in his warrant the name of James Jones in the belief that James Jones is the correct name of the individual. Johnston v. Riley, 13 Ga. 97 (1853); 35 C.J.S. supra Section 16 b(1). Such was not the case here. The Governor of Pennsylvania, apparently believing the name Paul Barry West was an alias added what he believed was petitioner's correct name. If this was error it was harmless. The State's proof that the petitioner was in fact the person who had been arrested and indicted for the crimes charged in Pennsylvania was abundant, convincing and unrefuted. The Justice found that petitioner's identity as the person sought for trial by the Commonwealth of Pennsylvania was proved and nothing in the evidence suggests that he was in error.

We find no error in the Justice's denial of the Writ.

Appeal dismissed.

DUFRESNE, J., did not sit.