62 N.J. Super. 70 (1960)
162 A.2d 113
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
HAROLD PHILLIPS, DEFENDANT-APPELLANT. IN THE MATTER OF THE APPLICATION OF HAROLD PHILLIPS, APPELLANT, FOR A WRIT OF HABEAS CORPUS.
Superior Court of New Jersey, Appellate Division.
Argued May 24, 1960.
Decided June 21, 1960.
*72 Before Judges PRICE, GAULKIN and FOLEY.
Mr. Alan Handler argued the cause for defendant-appellant (Mr. Charles Handler, attorney).
Mr. William C. Brudnick argued the cause for plaintiff-respondent (Mr. Guy W. Calissi, Bergen County Prosecutor, attorney; Mr. Thomas S. O'Brien, on the brief).
The opinion of the court was delivered by FOLEY, J.A.D.
The Bergen County Court ordered extradition of the defendant to the State of Michigan and simultaneously denied his application for a writ of habeas corpus. Defendant appealed from each of said orders. The appeals have been consolidated.
The demand issued by the Governor of Michigan to the Governor of New Jersey recited that the defendant stood charged with the "crime of Conspiracy to Cheat and Defraud: Conspiracy to Violate [the] False Advertising Statute: and False Advertising," contrary to the laws of Michigan, and sought Phillip's extradition to that state. Annexed to it was a copy of a complaint which charged that Harold Phillips and others "on the 1st day of December, A.D. 1958 and on divers other days and dates up to and including the 4th *73 day of May, A.D. 1959, at the City of Detroit * * * unlawfully, falsely, deceitfully, and fraudulently did combine, conspire, confederate and agree * * * to obtain and acquire unto themselves * * * large sums of money." The complaint further charged that the said defendant and others "on December 1, 1958, and on divers other days and dates up to and including May 4, 1959 * * * did wickedly, maliciously, and feloniously conspire, combine, confederate and agree * * * for the purpose and with the intent * * * to violate the false advertising statute of this state. * * *."
The conspiratorial scheme alleged by the complaint was that the defendant Harold Phillips and others operating through a Michigan corporation, Floor Magic of Michigan, Inc. (hereinafter referred to as "Floor Magic") solicited prospective salesmen by advertisements placed in the Detroit Times and the Detroit Free Press, and in so doing made certain representations which were false in that they failed to apprise the prospective employees that an investment would be required of them. In addition to the general charge it was specifically alleged that one Andrew L. Percy, a prospective employee, was misled by an advertisement appearing in the Detroit Times of January 6, 1959, fraudulently placed therein by Harold Phillips and Floor Magic.
Also contained in the application for requisition were an information presented by the prosecuting attorney of Wayne County, Michigan, which alleged violations identical with those contained in the complaint, and affidavits of Andrew L. Percy, Soulby R. Haymour and Samuel H. Olsen, the prosecuting attorney. Percy in his affidavit, insofar as it is relevant here, alleged that after reading Floor Magic's advertisement of January 6, 1959 in the Detroit Times he applied for employment and, as part of the hiring procedure, was interviewed by Harold Phillips on January 16, 1959, and at that time signed what he thought to be a franchise but which was in fact a contract whereby he, unknowingly, became obligated to Floor Magic in the sum *74 of $889 for floor waxing materials to be supplied to him. He deposed further that he had been misled by the failure of the advertisement to indicate that an investment was required and by the statements made by Harold Phillips regarding the instrument signed. Soulby Haymour similarly deposed that he was misled by the advertisement and by oral representations made by Phillips when he met him on January 9, 1959. Both Percy and Haymour in their affidavits indicated that they met Phillips on the respective dates specified within the State of Michigan. Samuel Olsen's affidavit related the applicable statutory provisions allegedly violated. During the hearing of the matter in the Bergen County Court, Mr. Benjamin Cornelius, an assistant prosecutor of Wayne County, Michigan, testified that he saw Phillips twice in Michigan during April 1959.
Defendant offered no proof either at the hearing or by affidavit that he was not within Michigan during the period December 1, 1958 to May 4, 1959. His sole argument was that since the only specific dates alleged in the complaint and information are December 1, 1958, January 6, 1959 and May 4, 1959, the burden rested upon Michigan to prove his presence within that state on one of these dates, and having failed to do so his fugitivity was not established and he is not the subject of rendition. This contention is the basis of the appeal.
Extradition is a federal matter, the basic authority for which is contained in U.S. Const., Art. IV, § 2, cl. 2; Foley v. State, 32 N.J. Super. 154 (App. Div. 1954); see also 18 U.S.C., §§ 3182-3195. The federal provisions are implemented by N.J.S. 2A:160-1 et seq. Fundamental requirements of any interstate rendition proceeding are that the accused is the party named in the requisition and rendition warrant and that he is a fugitive from justice. Passalaqua v. Biehler, 46 N.J. Super. 63, 67 (App. Div. 1957). The latter inquiry includes a finding that in substance a crime is alleged, In re Williams, 101 N.J. Eq. 75 (Ch. 1927), and that the accused having committed said *75 crime has "fled" from the "demanding" jurisdiction. It must appear that the accused was within the demanding state at the time the crime was committed so as to constitute him a "fugitive" by his commission of the crime and his later flight. Hyatt v. People of State of New York ex rel. Corkran, 188 U.S. 691, 23 S.Ct. 456, 47 L.Ed. 657 (1903); N.J.S. 2A:160-11.
It is open to a defendant to show that he was not present within the demanding state when any of the essential acts of setting the crime in motion transpired. 4 Anderson, Wharton's Criminal Law & Procedure, § 1669, p. 387 (1957); United States ex rel. Miller v. Walsh, 90 F. Supp. 332 (D.C.N.D. Ill. 1949), affirmed 182 F.2d 264 (7 Cir. 1950). Absent such showing, the demanding authority's warrant is presumptive evidence of presence, State ex rel. Ross v. Owens, 187 Minn. 244, 244 N.W. 820 (Sup. Ct. 1932), and it devolves upon the accused to carry the burden of proving by clear and convincing proof that he was in fact absent. State of South Carolina v. Bailey, 289 U.S. 412, 53 S.Ct. 667, 77 L.Ed. 1292 (1933); People ex rel. Lejcar v. Meyering, 345 Ill. 449, 178 N.E. 80 (Sup. Ct. 1931); State ex rel. Ross v. Owens, supra.
The asylum state is without authority to adjudge the technical sufficiency of the indictment, this being exclusively within the domain of the demanding state. Ex parte Rubens, 73 Ariz. 101, 238 P.2d 402 (Sup. Ct. 1951), rehearing denied (1952), certiorari denied, Rubens v. Boies, 344 U.S. 840, 73 S.Ct. 50, 97 L.Ed. 653 (1952).
Defendant, while conceding that generally a variance between proof offered at trial and the date of the offense as charged in the indictment does not preclude conviction thereon, asserts that in an extradition proceeding such a variance is fatal since proof of presence in the demanding state on the date of the offense as alleged is jurisdictional and thus is indispensable to rendition. See Hyatt v. People of State of New York ex rel. Corkran, supra, 188 U.S., at p. 711, 23 S.Ct., at page 458, 47 L.Ed., at p. 661; *76 In re Gibson, 147 F. Supp. 591 (D.C.D.C.), affirmed Gibson v. Beall, 101 U.S. App. D.C. 397, 249 F.2d 489 (1957); Ex parte Shoemaker, 25 Cal. App. 551, 144 P. 985 (Ct. App. 1914). But in contending that the absence of proof that he was in Michigan on any of the three dates mentioned in the complaint constituted a failure to establish his presence in the demanding state at the time of the commission of the offense, defendant misinterprets the rule. This is a conspiracy case and the "date" of the crime alleged was a period commencing December 1, 1958 and ending May 4, 1959. The allegations referable to a continuing crime such as conspiracy must be distinguished from those charging offenses such as robbery or theft which are committed on a specific and determinable date. See Passalaqua v. Biehler, supra, 46 N.J. Super., at p. 71. True the overt act alleged to have been committed on January 6, 1959 was not proved. But this is immaterial. It was necessary for the prosecutor to show only that the defendant was in Michigan at some time while the conspiracy was in progress. Defendant cites no case to the contrary.
The precise point was disposed of in Ex parte Montgomery, 244 F. 967 (D.C.S.D.N.Y. 1917), affirmed per curiam, 246 U.S. 656, 38 S.Ct. 424, 62 L.Ed. 924 (1918). There the relator had been charged with conspiring "on the 1st day of March" 1917 and "at other times before and after said date, and within two years of the day of the taking of this inquisition" to cheat and defraud. The proof developed during the application for a writ of habeas corpus showed that the relator had never been in the county in which the alleged crime took place but had travelled through a remote part of the state on an interstate train with a co-conspirator on February 17, 1917. The court, in ordering that the relator be delivered up for rendition, dismissed the same argument as is here advanced by defendant Phillips, and said:
"While the indictment here mentions specially but a single day, it also alleges a conspiracy claimed to have been hatched during two years preceding the indictment. Conspiracy is a continuando [sic] *77 crime, and the rule is now well settled that the demanding state is not bound either upon the trial or in the extradition proceedings by the specific date laid. While the relator was not in the locus in quo during the period it is alleged the crime was committed, he was within the demanding state and in the presence of a coconspirator on an interstate train. The circumstances of the relator's presence in the demanding state during this period do not establish the impossibility of his participation in the conspiracy. The crime charged did not require his presence in the locus in quo. A conspiracy may be a continuing offense. Indeed, it has been held to be a purely continuous offense." 244 F., at p. 970.
Since the rendition papers presented to the trial court constituted prima facie evidence that defendant was in the demanding jurisdiction during the period of the conspiracy, the failure of the defendant to offer contradictory proof left the court with no alternative but to comply with the demand for rendition. Passalaqua v. Biehler, supra.
The orders of the Bergen County Court are affirmed.