94 N.J. Super. 267 (1967)
228 A.2d 74
IN THE MATTER OF THE APPLICATION OF WILLIAM DEGINA FOR WRIT OF HABEAS CORPUS.
Superior Court of New Jersey, Appellate Division.
Argued January 30, 1967.
Decided March 16, 1967.
*269 Before Judges CONFORD, FOLEY and LEONARD.
Mr. Carlos Peay, Jr., Assistant Prosecutor, argued the cause for appellant (Mr. Guy W. Calissi, Bergen County Prosecutor, attorney).
Mr. Arthur J. O'Dea, Jr. argued the cause for respondent (Messrs. Goodman & O'Dea, attorneys).
The opinion of the court was delivered by CONFORD, S.J.A.D.
The State appeals from an order of the Law Division in habeas corpus proceedings brought by the applicant William DeGina discharging him from custody. The applicant had been apprehended in this State pursuant to extradition proceedings instituted by the Governor of Pennsylvania followed by the issuance of a rendition warrant by the Governor of this State. The regularity of the extradition proceedings is not challenged.
The papers attached to Pennsylvania's requisition include a complaint naming the fugitive as William P. DeGina, residing at 71 N. Washington Street, Tarrytown, N.Y., and charging larceny (stealing blank checks), receiving stolen property and conspiracy, all at "approximately 1:30 P.M." on Thursday, February 10, 1966, at the premises of Arjay Motors, Levittown, Bristol Township, Bucks County, Pennsylvania.
At the hearing below applicant was present in the courtroom along with other persons, but was not identified to those present as such until the judge directed he be brought to the counsel table, after all the witnesses had testified.
*270 Applicant's sole proof consisted of the testimony of one Elieson, aged 30, who described himself as a stockbroker and agent in used car and miscellaneous financing businesses, with offices in Hartsdale, N.Y. and New York City, N.Y. He had been in business in New York one year. Previously he had "operated in Florida." He testified that applicant had been in his Hartsdale (Westchester County) office on February 10, 1966 from about 11 A.M. to about 12:15 P.M., conferring about a mortgage applicant had solicited from him. (It is apparently conceded that Hartsdale, N.Y. is more than two hours by car from Levittown, Pa.) The witness had no direct recollection of the specific date or hour involved but reconstructed those from other related circumstances (e.g., he went to Florida the next day). He had no written memorandum or diary entry of the appointment with applicant. He knew applicant's telephone number, but not his address, and was not asked as to the former.
Robert Levondosky, victim of the alleged crimes, offered as a witness by the State, was not able to identify anyone in the courtroom as either of the two persons he testified were involved ("unless he changed some of his looks or something"), but he did identify a photograph showing front and side views of a person wearing a sign, "Police Dept. Bergenfield, N.J. * * * 3-19-65," as that of one of the men who committed the crime and whom he testified he had previously identified therefrom to the police in Pennsylvania. His courtroom identification from the photograph was with some equivocation.
The photograph mentioned was not authenticated by evidence aliunde but was admitted into evidence as exhibit S-1, over applicant's objection based upon lack of authentication, as being "in connection with identification." The back of the photo, on which side the marking of its exhibit number was written in by the reporter, contains an identification of the subject as William Patrick DeGina of 71 N. Washington St., Tarrytown, N.Y., gives the height as 5'11", weight 160 and hair as gray-black. The photograph itself shows the subject *271 as having medium-length hair and not wearing eyeglasses. The significance of this data is that, although Levondosky described one of the culprits as "five-ten, five-eleven," and weighing "about 170 pounds," the applicant in court was described by the assistant prosecutor during the course of argument as wearing eyeglasses, having a "crewcut" hair style, and red "dyed" hair. The State charged applicant with "a blatant attempt to perpetrate a hoax."
At the oral argument before this court counsel for applicant questioned whether the data on the back of exhibit S-1 was properly part of the exhibit. While he conceded he had examined that data at the hearing below, he represented to us that he understood the photograph to have been offered in evidence only as to the photograph itself. It would seem to us that the entire document, front and back, is properly to be regarded as included in the exhibit, particularly in view of the place of marking of the exhibit number. However, we need not pursue this question further at this juncture since our disposition of this appeal will afford both sides the opportunity of full protection with respect to this exhibit.
In announcing his decision at the conclusion of the proofs and before argument the trial judge stated: "* * * I find there is no proof of identification that the man was in that particular area at this time." After argument the court said: "I am going to make a finding that there is no proof before this Court that this man was in Pennsylvania at that particular time and I will allow the writ of habeas corpus."
At the outset, it must be observed that the trial judge does not appear to have been guided by the correct rule as to presumptions and burden of proof in a contest of this kind. He appears to have labored under the assumption that the State bears the burden of proof of establishing that the arrested person was present in the demanding state at the time of the crime and is a fugitive therefrom. To the contrary, the rule is that "the demanding authority's warrant is presumptive evidence" of the presence in that jurisdiction at the time of the crime of the person named in the papers, and *272 "it devolves upon the accused to carry the burden of proving by clear and convincing proof that he was in fact absent." State v. Phillips, 62 N.J. Super. 70, 75 (App. Div. 1960), affirmed o.b. 34 N.J. 63 (1961).
Moreover, it is the constitutional duty of an asylum state to enforce the interstate rendition clause of the U.S. Constitution, Art. IV, § 2, par. 2, faithfully, and not construe it narrowly against the demanding state. See State of South Carolina v. Bailey, 289 U.S. 412, 53 S.Ct. 667, 77 L.Ed. 1292 (1933), where the court said:
"* * * [A] faithful, vigorous enforcement of the constitutional and statutory provisions relating to fugitives from justice is vital to the harmony and welfare of the states, and that `while a state should take care, within the limits of the law, that the rights of its people are protected against illegal action, the judicial authorities of the Union should equally take care that the provisions of the Constitution be not so narrowly interpreted as to enable offenders against the laws of a state to find a permanent asylum in the territory of another state.'" (at p. 421, 53 S.Ct., at p. 671)
Having admitted exhibit S-1 into evidence, and proof having been adduced that the victim of the alleged crime had previously identified to the Pennsylvania police as one present at the scene the person pictured on the exhibit and identified thereon by the same name and home address as the fugitive described in the extradition documents, the trial court did have before it substantial evidence of the presence of the accused in Pennsylvania at the time of the alleged crimes, contrary to the court's finding that there was "no proof" thereof. Where there is a mere conflict of evidence as to the petitioner's fugitive status he should not be discharged on habeas corpus. State of South Carolina v. Bailey, supra (289 U.S., at p. 422, 53 S.Ct. 667).
We are aware of applicant's contention that there was no proof at the hearing aliunde exhibit S-1 that the person pictured thereon "was William DeGina." We agree that judged by ordinary rules of competency the exhibit required further foundation before admission. However, the strict *273 rules of evidence applicable to criminal trials by jury do not pertain in habeas corpus. 1 Wigmore, Evidence (3d ed. 1940), § 4(6), p. 24; Notter v. Beasley, 240 Ind. 631, 166 N.E.2d 643 (Sup. Ct. 1960); Letwick v. State, 211 Ark. 1, 198 S.W.2d 830 (Sup. Ct. 1947). In any case, it would seem that the necessary foundation could readily have been supplied by the State had the court required it. Presumably, the Bergenfield police authorities could have established the circumstances surrounding the taking of the picture, the making of the identifying entries thereon and the sources of the underlying information. We assume, moreover, that it is likely that the exhibit could have been made fully evidential as to its contents under the Uniform Business Records As Evidence Act. N.J.S. 2A:82-34 et seq. See Fagan v. City of Newark, 78 N.J. Super. 294, 308 et seq. (App. Div. 1963). We of course do not settle these evidence questions at this time, but the interests of justice to the Commonwealth of Pennsylvania and the faithful performance by this State of its constitutional obligation to a sister state call for a remand so that the prosecuting authorities of this State may take all lawful steps available to resist the application for discharge as well as to afford applicant every opportunity to meet his burden in this kind of proceeding.
Some additional comments on the evidential status of the case as made below may be helpful to the trial court on remand.
Concerning the narrow issue as to applicant's identity with the person intended for extradition by the Pennsylvania papers, as distinguished from the issue of applicant's fugitivity, we note that the individual sought is identified in the papers as William P. DeGina, of a named address in Tarrytown, N.Y. Applicant offered no evidence that his middle initial was not "P." or that he never resided at the stated address. This clearly should weigh against him on the stated issue in view of the initial presumption of identity of person arising from the identity of name. See 39 C.J.S. Habeas *274 Corpus § 39(a), pp. 551-552. He may repair these omissions, if able to, on the remand.
As to the issue of fugitivity, the trial judge seems to have been influenced by the victim's inability to identify the applicant in court. In this regard, as we have already indicated, the court overlooked the fact that the witness had previously identified to the police as one present in Levittown at the time in question the subject of a photograph identified by the exhibit as having the same name, address, height and weight as the person sought, as indicated by the witness's testimony and the extradition papers taken together. And the inability of the witness to identify applicant in court may well have been the product, as asserted by the State, of a subsequent coloring and cutting of the hair (see supra) and the wearing of eyeglasses. These neutralizing factors may become stronger at the hearing on remand. Moreover, some significance may be attached to the failure of the applicant in this civil proceeding to take the stand to refute the State's presumptive case in the various particulars detailed herein. State of South Carolina v. Bailey, 289 U.S. 412, 418, 53 S.Ct. 667, 77 L.Ed. 1292 (1933); Passalaqua v. Biehler, 46 N.J. Super. 63, 72 (App. Div. 1957); People ex rel. Guidotti v. Bell, 372 Ill. 572, 25 N.E.2d 45 (Sup. Ct. 1940).
As to the alibi testimony offered by applicant, it suffices, at this juncture, to say that it was not necessarily credible, and the trial judge did not state that he found it to be clear and convincing as to the critical issue of applicant's absence from Levittown at or about the time of the crime.
The matter will be remanded to the trial court for supplemental hearing with directions to require the State to offer additional proofs or foundations for proof as indicated above and in such other respects as either the Court or the State may deem advisable; and with leave to applicant to offer any additional proof. The proceeding will then be redetermined by the trial court in accordance with the rules and principles stated herein. Specific findings of fact and conclusions of law shall be entered.
*275 Reversed and remanded for further proceedings conforming with this opinion. Jurisdiction is not retained. No costs on this appeal.